**United States District Court**
**Eastern District of Michigan**
**Southern Division**

The United States of America,                           Criminal No. 21-cr-20354

        Plaintiff,                                              Hon. Paul D. Borman

v.

D-3 Tamar Watkins,

        Defendant.
_____/

**Government's Response Opposing**
**[Dkt. 236] Motion for Revocation of Detention Order**

    Tamar Watkins is a high-ranking member within the violent Almighty Vice Lord Nation ("AVLN") gang, a drug trafficker, and a convicted murderer, facing a presumption of pretrial detention. Watkins is a major figure in the Traveling Vice Lord ("TVL") branch, and, indeed, the whole of the AVLN gang, holding one of the highest possible ranks across branches as a "5 Star Universal Elite," and serves as an advisor to the Michigan TVL Chiefs. His lofty position in the TVL branch affords him the power to issue orders, including kill orders, to the 100 or more members of the TVLs around the State of Michigan, which orders are required to be followed pursuant to Vice Lords law. By his own admission, Watkins has been a part of the Vice Lords since 1993, through prior periods of imprisonment and court supervision that did nothing to interrupt his association with this violent gang. There are no conditions or combination of conditions of release that will ensure the safety of the

community and Watkins' appearance before this Court. For these reasons, following a detention hearing, Magistrate Judge Kimberly Altman ordered Watkins detained. (ECF No. 192: Det. Order, PageID.508).

Watkins now challenges this order. (ECF No. 236: Mot. to Revoke Det. Order, PageID.778-81). This Court should deny Watkins' motion seeking release, and order his continued pretrial detention in this matter.

## I. Legal Standard

Pursuant to the Bail Reform Act, 18 U.S.C. § 3142, a defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). Under § 3145, this Court reviews a magistrate judge's pretrial order *de novo*. *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio Feb. 24, 2000) (collecting cases). The United States moves for detention under § 3142(f)(1)(C), because the charges involve a drug offense punishable by 10 years or more. The government seeks detention on non-appearance and dangerousness grounds.

There is a statutory presumption of detention, 18 U.S.C. § 3142(e)(3)(A), which Watkins may rebut if he "comes forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Once a defendant satisfies his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be

2

considered among those weighed by the district court." *Id.* (internal citation omitted). "The presumption remains a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* "To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm." *Id.* at 946 (internal citations and quotations omitted).

In addition to the presumption of detention, the Court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## II.  Factual Background

The United States relies on its factual proffer during the June 9, 2021, detention hearing, and some additional relevant facts, which are detailed below. This proffer included (1) a written proffer (ECF No. 85: Written Proffer in Support of Mot. for Det.); (2) the Pretrial Services Report; (3) evidence of Watkins' involvement in the AVLN; (4) evidence of Watkins' drug trafficking, including controlled buys on December 10, 2020 and December 29, 2020; and (5) facts surrounding the investigation of Watkins and his post-arrest statement.

### i. The AVLN is an organized, violent gang

The AVLN is a highly organized, violent gang adhering to strict by-laws and a chain-of-command structure. (ECF No. 85: Written Proffer, PageID.266-70). Vice Lord members must follow orders from higher-ranked leaders. (*Id.* at PageID.268). AVLN literature requires that members must "never deny [an] order from [a] superior officer of this nation. You will carry it out immediately[.]" (*Id.*). This includes orders to commit violent acts like murder. (*Id.*).

Vice Lords promote a climate of fear through violence and threats of violence. Gang members are strictly prohibited from speaking with outsiders about the Vice Lords or from cooperating with law enforcement. Vice Lords kill members suspected of cooperating with law enforcement. *See* (*id.* at PageID.270-74). They also have a long memory and do not forget when gang members cooperate with law enforcement. (*Id.* at PageID.273). On May 27, 2015, AVLN members fired 23 shots into the home of V.T. and S.T., two former Vice Lords whom AVLN members believe cooperated with federal law enforcement. During the shooting, several bullets injured V.T., and S.T., as well as their family members, T.T.-1 and T.T.-2—mere centimeters made the difference between a quadruple homicide and the victims' eventual survival of the shooting. Nearly four years later—after a federal prosecution for AVLN members involved in the May 2015 shooting—AVLN members continued to discuss plans to murder the suspected cooperators.

4

Current power struggles within AVLN leadership also present significant danger for violent retaliation. Under AVLN law, treason is punishable by "no less than a life of misery or Death." (*Id.* at PageID.275). Leaders within the Mafia Insane Vice Lords ("MIVLs"), with the support of the TVLs—Watkins' branch—planned to overthrow Insane Vice Lord ("IVL") Prince D-1 Kevin Fordham and those underneath his leadership.

Vice Lords also possess and share firearms to protect themselves and other AVLN members. Under AVLN law, gang members are required to protect and defend AVLN members, which includes retaliation for any violence carried out against an AVLN member. (*Id.* at PageID.279). AVLN literature requires, "If One Member Fights, We All Fight." (*Id.*). Specifically, "it is the unspoken obligation of every VL [Vice Lord] to defend himself [and] every other VL to the extent of giving their life[,] if necessary" and "[i]f any VL is attacked[,] it is the sworn duty of every VL to overcome his attacker by whatever means necessary." (*Id.*).

Gang members are required to "aid and assist" other AVLN members. (*Id.*). Specifically, Law #1 of the AVLN's Supreme Constitutional Laws provides, "[a]t any time a member is in trouble, in danger, or need of assistance, you are to assist them, whether they are right or wrong[,] to the best of your ability[.]" (*Id.* at PageID.279-80). And Law #14 provides, "A Vice Lord must act as a solider for the [Almighty Vice Lord] Nation to the point of his/her death." (*Id.*) This includes carrying and using firearms to protect themselves and other AVLN members. (*Id.*)

5

The AVLN also participates in drug trafficking involving fentanyl, cocaine, cocaine base, heroin, ecstasy/MDMA, methamphetamine, prescription pills, and marijuana. (*Id.* at PageID.280). Based on their involvement in the gang, AVLN members enjoy connections to drug suppliers and utilize an interstate network to facilitate drug trafficking. (*Id.*).

### ii. Under Watkins' leadership, the Michigan TVL branch was attempting to increase its drug-trafficking operations and member discipline

Watkins is a self-admitted Vice Lord for nearly thirty years. As a leader with longstanding and substantial ties to national AVLN leadership in Chicago, and a "5 Star Universal Elite," Watkins has considerable authority under AVLN law that extends across AVLN branches.

Watkins worked as a liaison between the Michigan TVL branch and the national gang leadership in Chicago, serving as an advisor to the Michigan TVL Chiefs to enhance the branch's status and criminal activity. Watkins previously resided in Chicago, and spent more than 13 years incarcerated for murder in Illinois state prison where the Vice Lords held strong influence. For much of 2019 and 2020, D-4 Terry Douglas operated as the Chief for the Michigan TVL branch, but following his arrest in November 2020, the TVL branch in Michigan was effectively leaderless. Watkins stepped into the breach, and began rebuilding the Michigan leadership structure, making use of his Chicago connections for a drug-trafficking pipeline and to gain

6

official recognition for new leadership that he groomed. Watkins worked primarily behind the scenes, but directly shaped the new TVL leadership.

During a recorded meeting on January 9, 2021, Watkins stated his desire to make the TVLs in Detroit as strong as elsewhere in the country, and that he could connect members to sources of supply in Chicago for drug sales. He discussed helping to consolidate the different "decks" (subgroups) of TVLs in the Detroit area under unified leadership, in order to strengthen their ability to act and work together to commit crimes. He stated that he was high ranking within the national AVLN and planned to take D-9 Javon Wilhite to Chicago to introduce him to national AVLN leadership.

At a recorded TVL meeting two weeks later, on January 23, 2021, not attended by Watkins, Wilhite explained to members that he had made the trip to Chicago with Watkins, and that Wilhite was now the Chief Elite for the TVLs in Detroit. Wilhite further explained that Watkins told him to get a team together to make money for the TVL branch, and that Watkins would supply kilo-level quantities of cocaine, crack cocaine, heroin, and other drugs for members to sell. Wilhite also discussed that AVLN discipline would be strictly enforced with respect to the drug trafficking—if a gang member "messed up the bag" (shorted money or lost drugs), Wilhite would have to kill that person, otherwise Watkins would kill Wilhite. Wilhite also confirmed that there was kill order issued throughout the AVLN against former TVL leader D-4 Terry Douglas.

7

This discussion was not idle talk. Watkins is a drug supplier who uses his AVLN connections to supply TVL members with drugs to sell. During a December 10, 2020, controlled buy, Watkins sold 27 grams of cocaine. Less than two weeks later, during a recorded call, TVL member D-16 Anthony Najera described that he had purchased an ounce of cocaine from Watkins that day that Najera intended to sell outside of Michigan. And on December 28 and 29, 2020, Watkins arranged for the sale of 20 grams of heroin, to be delivered by D-32 Lateef Moore, another Vice Lords member, which ATF purchased as part of a controlled buy on December 29, 2020.

### iii. Watkins has a history of violence, and an ongoing willingness to resort to violence.

As noted in the Pretrial Services Report, Watkins is a convicted murderer. He was initially sentenced to 30 years of imprisonment, but was released at the end of 2011. During a recorded conversation on January 9, 2021, Watkins described this arrest and conviction as part of the Chicago police seeking to break up the hold of the TVLs on the westside of Chicago in the mid-1990s, but that the TVLs in Chicago were back and strong.

Watkins' readiness to resort to murder is not a relic of the past. As noted above, during a January 23, 2021 meeting, Watkins' willingness to murder even other Vice Lords who "messed up the bag" was well understood by Javon Wilhite and other TVLs as they discussed undertaking trafficking drugs with Watkins. And after his arrest, Watkins discussed his intent to kill gang members who cooperated with law

8

enforcement, in violation of AVLN law. On June 3, 2021, while Watkins and other AVLN members and associates sat together awaiting interviews post-arrest in this matter, Watkins discussed his belief that other AVLN members must have cooperated with law enforcement which led to their arrests. Watkins stated that, "n------ talking too much, telling. N----- fucking rats. N-----ain't going to survive though, fucking with me." Watkins reiterated that "n----- ain't going to survive fuckin' with me. In jail or out, bro."

### iv. Watkins has an extensive criminal history, unclear residence, and significant ties outside this District

Watkins has spent the bulk of his adult life incarcerated for serious offenses. Watkins was 21 years old when he was arrested for murder in March 1997, and remained incarcerated until December of 2011. In July 2015, Watkins was arrested on a federal Felon in Possession of a Firearm charge, and, following conviction in 2016, served 24 months in custody, until March 2018. Thus, during the approximately 27 years of Watkins' adult life, he has been incarcerated for almost 17 of those years. And in the 8 years that Watkins was not incarcerated after serving his sentence for murder, he has had 7 new arrests, including the arrest that led to his federal felon-in-possession conviction. During this entire timeframe, he has been a Vice Lord, including while on parole and federal supervised release.

Watkins was not truthful when he told Pretrial Services that he was lifelong resident of Detroit, other than the period of his incarceration in Illinois for the

9

murder conviction. As noted in the report, Watkins had arrests in Chicago in 1993, 1995, three in 1996, and then in 1997 for the murder – strongly suggesting that he was residing there. Following his release from prison, he began having police contacts in Michigan, including his federal case, and during his period of federal supervised release (from March 2018 to September 2019), he resided in Detroit. But shortly after the expiration of that term of supervised release, Watkins' out-of-state contacts with law enforcement resumed: Jackson, Ohio arrests in March 2020 and again in June 2020; and a Greensburg, Indiana arrest in May 2020.

While it appears that Watkins is now settled somewhere in Detroit, Michigan, in the several weeks leading up to his arrest in this matter, location data for his cellphone (collected pursuant to a federal search warrant) showed weekly travel to the Chicago area, where Watkins has both family and significant Vice Lords ties— including drug suppliers. And where exactly Watkins lived prior to arrest remains unknown: Watkins told Pretrial Services that he lived with his mother, which she denied, stating that Watkins had lived elsewhere with his girlfriend for six years. When Watkins' girlfriend was interviewed by Pretrial Services, she, too, was unclear, giving multiple possible addresses for him. The address she eventually settled on was where Watkins was ultimately found and arrested on this matter – the same location where agents discovered six firearms, which Watkins admitted knowledge of during his post-arrest statement.

### III. Argument

Watkins—a convicted murderer, gang leader, and drug supplier—poses a significant danger to the community and nonappearance risk. Watkins also faces a presumption of detention. For these reasons, Magistrate Judge Kimberly Altman ordered his detention (ECF No. 192, PageID.508), which this Court should continue.

### i. Watkins, a convicted murderer, leader within the AVLN, and a cocaine and heroin trafficker, is a danger to the community.

Watkins is charged with a racketeering conspiracy and a drug-trafficking conspiracy. Drug trafficking itself is a dangerous offense. But there is more to Watkins' dangerousness because of the gang element. "In dealing with the danger to the community or other person concept, the courts look to more than whether or not defendant himself has been guilty of physical violence[.]" *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). "[T]he concept of a defendant's dangerousness as used in the [Bail Reform] Act is to be given a broader construction than merely danger of harm involving physical violence. Congress was apparently concerned with the safety not only of a particular identifiable individual, perhaps a victim or witness, but also of the community as a whole." *Id.* (internal citations and quotes omitted). The AVLN is dangerous as an enterprise and the Court is not required to ignore this fact. *See, e.g., United States v. Billingsley*, 682 F. App'x 681, 683 (10th Cir. 2017) ("[W]e are not convinced that the district court should ignore evidence about the group as a whole. It is important context that this DTO is intensely feared.").

11

Watkins' dangerousness far exceeds even the danger inherent to drug trafficking. Watkins' fellow gang members, with whom he has associated for years, understand his willingness to use deadly force if he is crossed, reminding one another not to "mess up the bag" for fear of being killed. And there is good reason for that belief: Watkins has killed before.

There are also significant witness-safety concerns. Broadly speaking, the Vice Lords have a long and documented history of attempting to kill and killing members suspected of cooperating with law enforcement. And, because of the power that leaders within the Vice Lords – like Watkins – exert over other members, it takes only a simple phone call to direct other Vice Lords to undertake a witness-silencing mission. Watkins himself is clearly interested in vengeance and quieting witnesses. On the very day of his arrest, Watkins discussed with other Vice Lords his intent to retaliate against these cooperators, explaining that cooperators "ain't going to survive though, fucking with me," and "n----- ain't going to survive fuckin' with me. In jail or out, bro."

Here, it is important to understand Watkins role in the Vice Lords, and the TVL branch in Michigan, specifically. In late 2020 and into early 2021, Watkins was successfully reorganizing the Michigan TVL branch, acting as a "kingmaker" in getting D-9 Javon Wilhite approved to be, first, the Chief for the Detroit TVL branch, and later, the entirety of the Michigan TVLs. But by Wilhite's own reckoning, Watkins remained above even him. Indeed, Watkins, as a 5 Star Universal Elite, has

12

substantial authority in the TVLs, and across all AVLN branches. And he has significant ties to Chicago national leadership. This means that, under Vice Lords law, orders issued by Watkins must be followed. And he has the connections to see to it that those orders circulate through the entirety of the AVLN, which still has hundreds of members in Michigan who are not incarcerated, and thousands around the country. Thus, a convicted murderer, who on the day of his arrest was already stating that "rats" are not going to survive, has significant ability to put into motion orders to silence those he believes have betrayed him.

To add to this dangerousness, Watkins is also a cocaine and heroin trafficker. He is charged with a controlled-substance offense, which is a factor under § 3142(g)(1). The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6; *see also United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001) (in conspiracy to possess with intent to distribute cocaine, testimony from family members was insufficient to overcome the presumption of detention). But Watkins is far more than your average drug dealer— he is a high-ranking gang member who has already shown an ability to use his authority and influence to broker the sale of drugs by another Vice Lords member, which he did on December 28 and 29, 2020.

The nature and circumstances of the offenses with which Watkins has been charged are serious, and obviously violent. The AVLN is a violent, retaliatory gang, And Watkins is a convicted murderer who has stated a desire to kill suspected cooperators. There are no conditions or combinations of conditions—even the most restrictive condition of home incarceration—that can adequately ensure that he will not seek retaliation, particularly when such retaliation can be ordered with a simple phone call or in-person meeting. Similarly, Watkins' leadership role provides him the ability to continue to order and direct sales of controlled substances, as recorded calls and interactions show that he has done during this investigation. There are no conditions of release that can stop that.

The weight of the evidence likewise supports detention. The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. "[S]trong evidence against a person . . . could increase the likelihood of danger to the community because they could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior." *United States v. Rice*, No. 3:04CR-83-R, 2006 WL 1687749, at *2 (W.D. Ky. June 19, 2006). As discussed above, the weight of the evidence against Watkins is strong, which makes it more likely that he will engage in dangerous behavior.

14

Watkins history and characteristics likewise support detention. He has a substantial criminal history, and, at 45 years old, has already been incarcerated for half of his adult life. He is a convicted murderer who has been a member of a violent gang for the entirety of his adult life, including during periods of incarceration, and during periods of prior court supervision.

Watkins cannot overcome the presumption of detention. Watkins is the type of offender that, in Congress's "substantive judgment . . . should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945. Watkins does not present "special features" that take his case "outside the congressional paradigm." *Id.* at 946. Even if Watkins rebutted the presumption of detention, it is a factor that weighs heavily in favor of detention.

In these circumstances, there are no conditions that can adequately protect any individual or the public if Watkins were to be released. Common conditions to attempt to mitigate danger, such electronic monitoring or home incarceration, mean little because they do nothing to prevent Watkins from ordering lower-ranked members to engage in violence, which they are required to perform. As discussed above, Watkins has authority to issue kill orders for members suspected of cooperating with law enforcement or engaged in treason. And he can issue these orders from the comforts of his home.

### ii. Watkins is a risk of flight

No conditions will reasonably assure Watkins' appearance as required. Watkins has substantial ties outside to Chicago, where he has family and connections to Chicago and national Vice Lords leadership, and to where he has traveled weekly during at least the month prior to his arrest. He has previously used alias names when arrested, and has now been arrested in three different states (Michigan, Ohio, and Indiana) in just the last 13 months. He was not truthful with Pretrial Services about where he resides, and his employment (he claims to own a construction business) was verified only by family members. While he claims to have worked with a charity for 8 months, during this same time he was also selling cocaine, brokering the sale of heroin, and building up Michigan's TVL branch. Little credit should be given to that "charity work" as something that ties Watkins to the community.

Facing a 15-year mandatory minimum, and with a criminal history that he surely understands will push his eventual sentence in this matter (where the elements of his charged crimes are established by controlled buys and recordings of his own words) higher than that, there is little reason to believe that Watkins is not a substantial flight risk. There are no conditions of release that can adequately ensure his appearance.

16

## IV. Conclusion

Because of Watkins' dangerousness and non-appearance risk, the Court should deny his motion, and continue his detention pending trial.

                                           Respectfully Submitted,

                                           Saima S. Mohsin
                                           Acting United States Attorney

                                           */s A. Brant Cook*
                                           A. Brant Cook
                                           Assistant United States Attorney
                                           211 West Fort Street, Suite 2001
                                           Detroit, Michigan 48226-3211
                                           (313) 226-9756
                                           Brant.cook@usdoj.gov

Date: June 28, 2021

## **Certificate of Service**

I hereby certify that on June 28, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to the attorney of record.

*/s A. Brant Cook*
A. Brant Cook
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9756
Brant.cook@usdoj.gov
